UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE BARBARA HAMILTON, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 16-cv-01823-W-MDD <br><br> **REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> [ECF NOS. 14, 15] |

Plaintiff Janice Barbara Hamilton ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff moves the Court for summary judgment reversing the Commissioner and ordering an award of benefits, or in the alternative, to remand the case for further administrative proceedings. (ECF No. 14). Defendant has moved for summary judgment affirming the denial of benefits. (ECF No. 15).

For the reasons expressed herein, the Court recommends that Plaintiff's

motion be **DENIED** and Defendant's motion be **GRANTED**.

## I. <u>BACKGROUND</u>

### A. <u>Factual Background</u>

Plaintiff alleges that she became disabled on July 1, 2013 due to back and knee pain. (A.R. 74, 24-25).[1] Plaintiff's date of birth, December 6, 1965, categorize her as a younger individual at the time of filing. She has since changed her age category to that of an individual closely approaching advanced age. 20 C.F.R. §§ 404.1563, 416.963; (A.R. 42).

### B. <u>Procedural History</u>

On February 10, 2014, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act ("Act"). (A.R. 21). Plaintiff's claim was denied initially on March 14, 2014, and denied upon reconsideration on June 28, 2014. (A.R. 21). A hearing was held on October 7, 2015, before Administrative Law Judge ("ALJ") Donald P. Cole. (A.R. 36-72). Plaintiff appeared and was represented by counsel. (A.R. 36). Plaintiff and Vocational Expert ("VE") Erin Welsh testified at the hearing. (A.R. 62-70).

On November 25, 2015, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 21-31). Plaintiff appealed and submitted additional information to the Appeals Council. (A.R. 1, 6). After considering the additional information, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (A.R. 1-3). Consequently, the ALJ's decision became the final decision of the Commissioner. (A.R. 1).

On July 15, 2016, Plaintiff filed a Complaint with this Court seeking

---

[1] "A.R." refers to the Administrative Record filed on August 4, 2016 and is located at ECF No. 12.

judicial review of the Commissioner's decision. (ECF No. 1). On October 27, 2016, Defendant answered and lodged the administrative record with the Court. (ECF Nos. 11, 12). On December 2, 2016, Plaintiff moved for summary judgment. (ECF No. 14). On January 6, 2017, the Commissioner cross-moved for summary judgment and responded in opposition to Plaintiff's motion. (ECF Nos. 15, 16). On January 25, 2017, Plaintiff responded in opposition to the Commissioner's motion. (ECF No. 17).

## II. <u>DISCUSSION</u>

### A. <u>Legal Standard</u>

The supplemental security income program provides benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1382. To qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The disabling impairment must be so severe that, considering age, education and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner makes this assessment through a process of up to five steps. First, the claimant must not be engaged in substantial, gainful activity. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work. 20 C.F.R. § 416.920(d). If the claimant's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded. *Id.* If the claimant's impairment does not meet or is not equivalent to the requirements of a listed

impairment, the analysis continues to a fourth and possibly fifth step and considers the claimant's residual functional capacity. 20 C.F.R. § 416.920(e). At the fourth step, the claimant's relevant work history is considered along with the claimant's residual functional capacity. *Id.* If the claimant can perform the claimant's past relevant work, benefits are denied. 20 C.F.R. § 416.920(f). At the fifth step, if the claimant is found not able to perform the claimant's past relevant work, the issue is whether claimant can perform any other work that exists in the national economy, considering the claimant's age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920(g). If the claimant cannot do other work that exists in the national economy, benefits are awarded. *Id.*

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3). The scope of judicial review is limited, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health & Human Services*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala* 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational

16-cv-01823-W-MDD

interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

Even if a reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

B. The ALJ's Decision

The ALJ concluded Plaintiff was not disabled, as defined in the Social Security Act, from July 1, 2013, through the date of the ALJ's decision, November 25, 2015. (A.R. 21).

The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease and knee sprain/strain. (A.R. 23). The ALJ determined that Plaintiff did not have an impairment or combination thereof

that meets or is medically equivalent to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526) because no physician has opined that the severity of Plaintiff's conditions equate to any listed impairment, and no medical evidence in the record supports a finding thereof. (*Id.*).

The ALJ also found that Plaintiff has the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR [§] 404.1567(b) except frequently balancing and crouching; occasionally climbing stairs and ramps, but no climbing ladders, ropes, or scaffolds; occasionally stooping, kneeling, and crawling; avoiding concentrated exposure to extreme cold, vibrations, and hazards such as moving machinery and unprotected heights." (A.R. 23-24). In making this finding, the ALJ noted that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms "are not fully credible" because Plaintiff's daily activities and objective medical evidence did not support her alleged symptoms. (A.R. 26). Based on VE Welsh's testimony, the ALJ found that Plaintiff is capable of performing past relevant work as a dental assistant and office manager because her RFC permits her to perform these jobs as they are actually and generally performed. (A.R. 30). The ALJ specifically noted the following to be of particular relevance:

1. Plaintiff's Testimony

The ALJ noted that Plaintiff alleged back problems including disc degeneration requiring disc removal, spinal fusions, metal cages, rods, screws and hardware implementation, a torn disc in February 2014, repeated disc tearing, L2 and L3 retrolisthesis and broad-based posterior endplate osteophyte L2 and L3 3 mm causing pressure of the thecal sac, as well as knee problems requiring surgical intervention. (A.R. 24). She claimed that her impairments cause pain and limit her ability to perform exertional,

non-exertional, postural, environmental, daily and personal care activities. (*Id.*).  Plaintiff further claimed that she experienced ten days of paralysis after her February 2014 disc tear and similar paralysis after subsequent disc tears.  (*Id.*).  She stated that she is able to sit in a car for half an hour and alleged that her impairments made it difficult to care for herself, work, sleep, put shoes on and go outdoors with family and friends.  (*Id.*).  Plaintiff also alleged that she was prescribed Flexeril, Prevacid, Xanax, Lansoprazole, Alprazolam, allergy eye drops, probiotics, Salonpas and Vicoprofen.  (*Id.*).  Plaintiff maintained the only medication that helps with her pain is "ice every two hours, followed with using a tens unit."  (*Id.*).  The ALJ specifically noted that Plaintiff claimed that her medications caused sleepiness and inability to function, but admitted that the lowest dose of Vicoprofen works. (A.R. 24).  Plaintiff also alleged that she wore a back brace when experiencing unbearable pain and that cold/damp weather exacerbates her pain.  (A.R. 25).

The ALJ specified that in Plaintiff's March 6, 2014 questionnaire, she admitted that she can perform activities for two to three hours after taking a pain pill, and would be "good" for another two to three hours after laying down for an hour.  (A.R. 24-25).  Plaintiff alleged disc tears happen often, and they keep her in bed for three to four days.  (A.R. 25).  The ALJ mentioned that Plaintiff attempted to walk daily, perform errands and keeps house in two to three hour intervals.  (*Id.*).  Plaintiff acknowledged that she lived in a two-story home, and that as long as she has no torn discs and paralysis, she can climb twelve stairs, lift five pounds and carry two pounds.  (*Id.*).  She further admitted she was capable of grocery shopping once a week, house cleaning in small areas each day, driving and gardening once a week for enjoyment.  (*Id.*).  Plaintiff also performed yard work, which involved using a blower and cleaning windows every few months.  (*Id.*).  The ALJ found

Plaintiff's alleged impairments inconsistent with her daily activity and social interaction. (*Id.*).

The ALJ additionally mentioned Plaintiff's March 1, 2015 letter and found the assertions therein not fully credible. (A.R. 25). The ALJ noted that in her letter, Plaintiff alleged that she was unable to stand or sit for more than an hour, the pain kept her from sleeping through the night and bilateral leg nerve pain would numb her leg and render her unable to walk for days. (*Id.*). Plaintiff also asserted that a surgical solution is required because another disc was collapsing and some of her implanted metal was separating from bone. (*Id.*). The ALJ noted that Plaintiff's allegations were inconsistent with the diagnostic imaging provided, and treatment notes did not support the need for surgical intervention. (*Id.*).

In addition, the ALJ described that during the hearing, Plaintiff testified about her surgery in 2009 or 2010, which "did more harm than good". (A.R. 25). The ALJ noted that this surgery occurred prior to Plaintiff's alleged onset of disability. (*Id.*). Plaintiff also testified that she took pain pills every two to three hours and that her pain medications were not working. (*Id.*). She also admitted to delaying additional back surgery and refusing a prescription for morphine because she fears that she will "lose [her] soul." (*Id.*). Plaintiff further expressed that she feared repeated disc tears, which allegedly cause electric shock, collapsing, paralysis and loss of bowel function. (A.R. 25, 26). She stated that disc tear recovery required three to seven days of lying on her back with ice or heat. (A.R. 26). Plaintiff further testified that she experienced left knee swelling and pain and that her right knee stiffens with cold weather. (*Id.*).

The ALJ found that Plaintiff's description of the severity of her pain is inconsistent with her testimony that she resisted going to the emergency

room three times a week for treatment because of time constraints, embarrassment and her ability to obtain stronger medication from her treating physician. (A.R. 25-26).

### 2. Third Party Opinions

The ALJ considered Plaintiff's third party correspondence dated between August and November 2014 from Plaintiff's spouse, mother, former aunt-in-law, friends and acquaintances. (A.R. 26). The ALJ found the third parties' statements credible only with respect to Plaintiff's ability to do light work. (*Id.*). More specifically, the ALJ noted that third party lay opinion regarding diagnosis and the severity of Plaintiff's symptoms or side effects of medications in relation to Plaintiff's ability to work is less persuasive than professional medical opinion on the same issues. (*Id.*). Here, the ALJ found that the third parties' opinions were not impartial because they have familial and/or relationship motivations to help the Plaintiff, further, their statements were not supported by medical evidence in the record. (*Id.*).

### 3. Treatment Records

The ALJ reviewed Plaintiff's treatment records dated from December 1999 through September 2015 and noted the 2013 and 2014 treatment notes as particularly relevant to Plaintiff's alleged disability beginning on July 1, 2013. (A.R. 26). The ALJ also pointed out that Plaintiff submitted sporadic treatment notes since the alleged onset date and no treatment notes since March 2014, other than two disability statements in May and September 2015. (A.R. 26-27).

#### a. 2013 Treatment Notes

Plaintiff's August 14, 2013 treatment note reported that Plaintiff took

/ / /

/ / /

Vicoprofen six times each day,[2] which reduced her pain and allowed her to function.  (A.R. 27).  Plaintiff's November 6, 2013 treatment note reported that her condition improved by fifty percent, and she was able to perform more physical activity due to decreased pain.  (*Id.*).  Plaintiff had also decreased her Vicoprofen intake to four to five tablets each day.  (*Id.*).  Plaintiff claimed that her pain increased during cold weather.  (*Id.*).  In addition, the ALJ mentioned that the treatment notes describe Plaintiff to be in mild to moderate discomfort and not overmedicated.  (*Id.*).  The ALJ also noted that other than mild to moderate lumbar paraspinal tenderness to palpation with moderate spasm, limited range of motion in the lumbar spine and a positive straight left leg raise test, her physical examinations were generally unremarkable.  (*Id.*).

### b. 2014 Treatment Notes

Plaintiff's January 29, 2014 progress note indicated that in December 2013, she developed knee swelling.  (A.R. 27).  It also reported that Plaintiff began to walk on a regular basis and started to walk three miles daily.  (*Id.*).  Additionally, the treatment note reported that Plaintiff appeared to be in mild to moderate discomfort and was not overmedicated.  (*Id.*).  The ALJ noted that Plaintiff's physical examination findings were similar to those in her previous exam, except for a moderate tenderness to palpation to the medial joint line and above the left knee patella.  (*Id.*).  Otherwise, the findings were generally unremarkable, and Plaintiff exhibited normal gait, strength, sensation and reflexes in the lower extremities.  (*Id.*).

---

[2] The ALJ mistyped the number of times Plaintiff was taking Vicoprofen; the record reflects that number to be six, not eight.  (*Compare* A.R. 27, *with* A.R. 259).

16-cv-01823-W-MDD

The ALJ additionally mentioned that Plaintiff's March 27, 2014 MRI revealed status post laminectomy of L4 and partial laminectomy of L3 with fusions of L3, L4, L5 and S1 bodies by pedicle screws, cages placed at L4-L5 disc space, combination of retrolisthesis of L2 in relation to L3 and broad-based posterior endplate osteophyte formation at L2-L3 level, which measured about 3 mm and caused pressure over the anterior aspect of the thecal sac. (*Id.*). The ALJ noted that Plaintiff declined bilateral knee x-rays and MRI to evaluate her worsening knee pain on January 29, 2014. (A.R. 27). The ALJ found that this demonstrates a potential unwillingness to improve her condition and indicates that her symptoms were not as severe as she described. (*Id.*). The ALJ further found that Plaintiff's failure to follow prescribed treatment without a good reason is a basis for finding that Plaintiff is not disabled. (*Id.*).

4. Michael Moon, M.D.

On May 6, 2014, treating physician, Michael Moon, M.D. opined that Plaintiff cannot physically perform the customary duties of a dental hygienist, cannot compete in the labor market and is permanently disabled. (A.R. 28). Dr. Moon reported that Plaintiff required daily round-the-clock medication to control her pain and experienced frequent lower back pain that caused her to be bedbound for days at a time. (*Id.*). Dr. Moon attributed Plaintiff's pain to segment instability at L2-3 and stated that surgery in this region may be an option. (*Id.*). Dr. Moon also noted that Plaintiff was reluctant to consider surgery and managed her pain by restricting physical activity and ingesting pain medication. (*Id.*).

On September 16, 2015, Dr. Moon opined that Plaintiff's pain and/or pain disorder, depression, anxiety and side effects from prescribed medication limited her ability to work. (A.R. 28). The ALJ found that Dr. Moon's

16-cv-01823-W-MDD

treatment notes do not support these conditions. (*Id.*). Dr. Moon also claimed that Plaintiff completed quarterly visits for fourteen years, but the ALJ noted that there were no treatment notes in the record since March 2014. (*Id.*). Dr. Moon reported Plaintiff's capacity as limited to the following: lifting and/or carrying 20 pounds rarely, 10 pounds occasionally and less than 10 pounds frequently, sitting for approximately two hours during a workday, standing and/or walking for less than two hours in a workday, requiring alternating positions from sitting, standing or walking, rarely bending, stooping, climbing, kneeling or crawling, being absent from work more than four days each month due to her condition and requiring unscheduled breaks and to lie down during the workday. (*Id.*).

The ALJ afforded little weight to Dr. Moon's disability statements. (A.R. 27, 28). The ALJ found Dr. Moon's opinions inconsistent with the entire evidence of record. (A.R. 28). Specifically, the ALJ found that Dr. Moon's statements were contrary to Plaintiff's treatment notes, which demonstrate that Plaintiff's symptoms improved over time. (*Id.*). For example, from August 2013 to November 2013, Plaintiff's pain and medication intake decreased, and in January 2014, she began to walk daily. (*Id.*). The ALJ also found that Dr. Moon's disability statements were inconsistent with Plaintiff's refusal to undergo x-ray and MRI examinations for her knee in January 2014, continued performance of daily living activities, personal care and social interaction, driving, resisting emergency room treatment and lack of records showing repeated disc tearing. (*Id.*).

5. State Agency Medical Consultants

The State Agency Medical Consultants opined that Plaintiff can perform light work including lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, sitting, standing and/or walking for about six

16-cv-01823-W-MDD

hours during a workday, climbing ramps and stairs, frequently to occasionally, climbing ladders, ropes or scaffolds, stooping, kneeling and crawling, frequently balancing and crouching and avoiding concentrated exposure to extreme cold, vibration and hazards. (A.R. 29). The ALJ accorded significant weight to the State Agency Medical Consultants' determinations. (*Id.*). The ALJ adopted an RFC similar to the State Agency Medical Consultants', with increased climbing limitations. (*Id.*). In support, the ALJ cited to Plaintiff's treatment notes showing medical improvement over time, refusal to undergo evaluations for knee pain and to go to the emergency room, continued performance of daily activities and lack of medical evidence supporting her allegations of disabling pain, The ALJ specifically noted that his RFC finding is supported by the evidence as a whole because Plaintiff's less-than-fully-credible complaints and the objective medical evidence do not support the severity of Plaintiff's alleged symptoms. (*Id.*).

6. Vocational Expert

At Plaintiff's October 7, 2015 hearing, VE Erin Welsh testified that Plaintiff's past work as a dental assistant is classified as skilled light work and her work as an office manager is classified as skilled sedentary work. (A.R. 30, 64). In light of the VE's testimony and Plaintiff's RFC, age, education and work experience, the ALJ found that Plaintiff is able to perform the physical and mental demands associated with these past relevant composite jobs as they are actually and generally performed. (A.R. 30).

The ALJ additionally found that, based on the VE's testimony, Plaintiff is able to perform other unskilled light work such as mailroom clerk and office helper and unskilled sedentary work such as callout operator and

escort vehicle driver, all of which exist in significant numbers in the national economy. (A.R. 30-31).

C.    Appeals Council Decision

On August 1, 2016, the Appeals Council set aside its decision denying Plaintiff's request for review of the ALJ's decision because Plaintiff submitted new medical evidence[3] to the Council not previously presented to the ALJ. (A.R. 1). The Appeals Council subsequently considered the Administrative Record, Plaintiff's new evidence and Plaintiff's reasons for challenging the ALJ's decision. (Id.). The Appeals Council also reviewed evidence from Dr. Moon, dated May 6, 2014 and September 6, 2015, but determined these records were not new "because they are copies of exhibits 3F and 8F [of the Administrative Record]." (Id.). The Appeals Council ultimately determined that Plaintiff's new evidence "does not provide a basis for changing the [ALJ's] decision." (Id.).

D.    Whether Substantial Evidence Supports the ALJ's Decision

Plaintiff contends that the ALJ's non-disability determination is not supported by substantial evidence and is not free of legal error. (ECF No. 14-1 at 3). Specifically, Plaintiff argues that in light of Dr. Kim's report—which was additional evidence submitted to and considered by the Appeals Council—the ALJ's RFC assessment is not supported by substantial evidence. (Id. at 6, 8). Plaintiff maintains that reversal is warranted because Dr. Kim is a specialist who examined Plaintiff, presented medical evidence,

_____

[3] Plaintiff submitted new medical evidence from Dr. Paul Kim, M.D. Dr. Kim examined Plaintiff on January 7, 2016 and concluded that she "has some inability at L2-3 with adjacent segment disease with degeneration." Dr. Kim opined that "Plaintiff is unable to work" and "is quite disabled." (A.R. 422).

reviewed Plaintiff's imaging reports and rendered an opinion consistent with the opinion of treating physician, Dr. Moon. (*Id.* at 7-8).

Defendant responds that because Dr. Kim's report lacks a thorough functional assessment and Plaintiff's lack of credibility is unchallenged, the substantial evidence that supported the ALJ's decision is unaffected. (ECF No. 15-1 at 5, 6). Defendant further asserts that Plaintiff is not entitled to a remand based on her new medical report because it does not a have a reasonable possibility of changing the outcome of the ALJ's determination. Defendant cites to *Burton v. Heckler,* 724 F.2d 1415, 1417 (9th Cir. 1984) in support. (*Id.* at 6). Plaintiff replies that *Burton* is inapplicable because it interprets Sentence Six of 42 U.S.C. § 405(g), and she "is requesting review under Sentence Four."[4] (ECF No. 17 at 4).

### 1. Legal Standard

When, as here, "the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); *see also Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

The Ninth Circuit distinguishes among the opinions of three types of

---

[4] The Court acknowledges that it is unclear whether the materiality and good cause standard in Sentence Six of 42 U.S.C. § 405(g) is required to justify remand in light of additional evidence not before the ALJ. *Compare Brewes*, 682 F.3d at 1164 (declining to apply the materiality standard), *with Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (requiring a showing of materiality and good cause). However, as more fully explained below, the ALJ's decision is supported by substantial evidence, and therefore, the Court need not reach this issue.

physicians: (1) those who treat the Plaintiff ("treating physicians"); (2) those who examine but do not treat the Plaintiff ("examining physicians"); and (3) those who neither examine nor treat the Plaintiff ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). As a general rule, more weight is given to the opinions of a treating source than to that of a non-treating physician. *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). Likewise, the opinion of an examining physician is typically entitled to greater weight than that of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit held:

> If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the 'length of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician. Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians.

*Id.* at 631 (internal citations omitted).

Where a non-treating, non-examining physician's opinion contradicts the treating physician's opinion, the ALJ may only reject the treating physician's opinion "if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). "The ALJ may meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating

his interpretation thereof, and making findings." *Morgan v. Apfel*, 169 F.3d 595, 600-601 (9th Cir. 1999) (citing *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989)).

2. Analysis

The Court will conduct a two-step analysis regarding Plaintiff's claim that Dr. Kim's new evidence and Dr. Moon's opinion evidence together outweigh the opinions of the State Medical Consultants. First, the Court will determine whether the ALJ properly afforded little weight to Dr. Moon. Second, the Court will determine whether Dr. Kim's post hearing opinion would alter the ALJ's decision.

Here, the ALJ afforded little weight to treating physician Dr. Moon's findings because he found them to be "inconsistent with the entire evidence of record." (A.R. 28). The ALJ explained that Dr. Moon's description of Plaintiff as "essentially permanently disabled" is unsupported by his own treatment records, which indicate Plaintiff's improvement over time. (A.R. 212, 261, 263). For example, Dr. Moon's treatment notes describe Plaintiff as appearing to be only in "mild to moderate discomfort." (A.R. 259, 261, 263). The treatment notes also report that Plaintiff's pain decreased from 2013 to 2014, as evidenced by Plaintiff reducing her Vicoprofen intake from six tablets a day to four and beginning to walk on a regular basis. (A.R. 259, 261, 263). Additionally, Dr. Moon's claim that Plaintiff's psychological conditions include depression and anxiety is inconsistent with his earlier treatment notes, which reported that Plaintiff was "alert and oriented," had a "stable" mood and denied suicidal ideation. (A.R. 263).

Although Dr. Moon alleged that Plaintiff completed quarterly visits for 14 years, the ALJ's record contained no treatment records since March 2014, despite the ALJ's request for updated records. (A.R. 312, 39-40, 72).

17

Plaintiff's counsel admitted during the hearing that he requested updated medical records from Dr. Moon, but that they were "basically just more of the same." (A.R. 39). Notably, Plaintiff admitted that she had not received any other treatment besides medication since she stopped working. (A.R. 53).

At the hearing, Plaintiff testified she experienced severe disc tears approximately three to four times a month. (A.R. 58-59). However, there are no treatment notes or diagnostic reports to support Plaintiff's claim of debilitating and repeated disc tears. Plaintiff was reluctant to consider surgery, resisted emergency room treatment, declined x-rays and MRI evaluations for her knee pain and instead chose to manage her pain by restricting her physical activity and taking pain pills. (A.R. 277, 56, 264). The Court notes that Plaintiff's counsel asked Plaintiff very few questions about her back and knee during his direct examination at the hearing. (*See* A.R. 59-62). The Court further notes that Plaintiff's alleged symptoms are inconsistent with statements in her Exertion Questionnaire about her ability to perform daily activities such as driving, walking daily, running errands, housekeeping and gardening in two to three hour intervals. (A.R. 183-85).

Based on this record, the Court finds that the ALJ gave specific and legitimate reasons for affording little weight to Dr. Moon's opinions and relying substantially on the non-treating, non-examining State Agency Medical Consultants' opinions. *See Jamerson*, 112 F.3d at 1066. Plaintiff's attempt to discredit the State Agency Medical Consultants' expertise is unpersuasive because both consultants are familiar with Social Security rules, regulations and requirements, and their respective opinions are consistent with each other and the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), (6).

The Court further finds that Dr. Kim's medical opinion does not affect

the ALJ's decision because it does not add material information that would undermine the substantial evidence relied upon by the ALJ. In addition to a physical examination, Dr. Kim reviewed and relied on the December 2015 radiographic and diagnostic studies provided by Plaintiff. (A.R. 420). Dr. Kim's findings are consistent with the findings made by the doctors who conducted or interpreted those studies. (A.R. 420).

Dr. Kim's physical exam produced no findings contrary to the other record evidence. For example, a 14-point patient evaluation showed Plaintiff's neck had full range of motion, and her lumbar spine had limited flexion/extension with normal stability, normal lordosis, and a well healed incision posteriorly. (A.R. 420). Dr. Kim noted that Plaintiff was unable to walk on her heels and toes bilaterally, but the totality of Dr. Kim's findings of Plaintiff's lower extremities were consistent with the record medical evidence. (*Id.*). For instance, Dr. Kim opined that she had full range of motion in her hips, knees and ankles, no atrophy of the quadriceps or gastrocnemius-soleus, smooth and symmetric swing phase coordination and a negative straight leg raise. (*Id.*). Dr. Kim's interpretation of Plaintiff's radiographic images of the lumber spine revealed no hardware loosening, solid fusion at L4-5 and posterolateral fusion at L3-4, retrolisthesis at L2-3, some degeneration at L2-3 and minimal central stenosis. (*Id.*). Ultimately, Dr. Kim's recommended treatment was for "facet blocks and see how she responds." (A.R. 420).

Accordingly, the Court does not find Dr. Kim's report persuasive on the issue of Plaintiff's disability. (A.R. 421). Dr. Kim's opinion was obtained after the ALJ's adverse determination. *See Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Circ. 1989); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). The Court finds that even taking into account Dr. Kim's report, the ALJ's RFC finding

and non-disability determination is supported by substantial evidence in the record. *Brewes*, 682 F.3d at 1163; *see Sandgathe*, 108 F.3d at 980 (defining substantial evidence as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Brawner*, 839 F.2d at 433 (denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error.").

The ALJ's findings are consistent with the record as a whole. Section 416.920b of Title 20 in the Code of Federal Regulations states that after reviewing all of the evidence relevant to a claimant's claim, the ALJ makes findings about what the evidence shows. The ALJ is also "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability." 20 C.F.R. § 416.927(d)(1). The Court's review of the administrative record revealed no ambiguity or error indicating that the ALJ's decision was based on less than substantial evidence. 42 U.S.C. § 405(g).

Accordingly, the Court finds the ALJ's findings of fact and conclusions of law, including Plaintiff's RFC, is supported by substantial evidence and free of legal error.

## III.   CONCLUSION

The Court **RECOMMENDS** that Plaintiff's Motion be **DENIED** and that Defendant's Motion be **GRANTED**. This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS HEREBY ORDERED** that any written objections to this report must be filed with the court and served on all parties no later than **August 16, 2017**. The document should be captioned "Objections to Report and

16-cv-01823-W-MDD

Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the court and served on all parties no later than **August 23, 2017**. The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 2, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge

16-cv-01823-W-MDD